May it please the Court. This case, this lawsuit, was originally filed in state court in Butte, Montana. It was removed by the appellees on October 4, 2011. Less than three weeks after removal, the defendants' appellees filed their motions to dismiss under Rule 12. The final hearing on the motions to dismiss was on October 22, 2012. I'm sorry, the motion to dismiss was filed in 2011. The matter was then finally decided by the district court on October 22, 2012. At that time, the district court ruled, among other things, that it did not have subject matter jurisdiction over this case. The pertinent portions of the district court's rulings in that regard appear on appellant's opening brief at pages 11 through 13. It is appellant's position that when the district court concluded and ruled that it did not have jurisdiction, it was completely divested of any power or authority to rule on any substantive issues in this case. It should have immediately remanded the case to state court. The appellees in this case want to preserve the substantive rulings of the district court and ignore the ruling of the district court that it did not have jurisdiction. What's your position on jurisdiction? This matter was removed, and less than three weeks later, the motion to dismiss was filed, so we had no opportunity to discover any facts. Do you have a position as we're here today? I don't, Your Honor. You don't believe that you've alleged sufficient or there is in the petition for removal sufficient grounds for jurisdiction? Well, if all those facts are taken as true, there may be, yes. That's the law, isn't it? What is the law, Your Honor? That the well-pleaded allegations that relate to jurisdiction of the notice of removal, that's what we look to, right? Well, I think this court looks to the district court's decision on whether or not it had jurisdiction. And what's our standard of review? Standard of review? Yes, in reviewing the district court's determination of whether there was jurisdiction. Well, you can review it if there's a cross-appeal filed on that issue, Your Honor. That's our position. But you just told us that notice of removal very quickly, Rule 12, motion granted. I take it your client did not have an opportunity to respond or contest what was in the notice of removal? Exactly, Your Honor. We had no opportunity to conduct any of that. So that's what we look to, right? Well, I think you have to look to the district court's ruling on jurisdiction, and they ruled that there was no jurisdiction. What is your position as to the correctness of that ruling? Was the court right or was the court wrong? Well, I don't think that's for us as appellants to decide. Do you have a position? We have a position. What is your position, yes or no on jurisdiction? No, because the district court — No jurisdiction. It's our position that there is no jurisdiction. Okay. What is the basis of your position that there was no jurisdiction in the district court? The district court's ruling on that, Your Honor. Regardless of — I'm sorry. You're not taking a position? On the law, what is your view of whether there was jurisdiction on the law? We simply don't know if there's jurisdiction. We don't know the truth of any of the matters stated in the notice of removal. You filed in state court. Yes, Your Honor. That was your choice of forum. Exactly, Your Honor. As I understand your position, it's that once the district court said it lacked jurisdiction, the case should have been remanded to state court. Exactly. So that's your position? That is our position, and the district court at that point had no basis under the law to make any substantive ruling on any other issues once it determines that it doesn't have jurisdiction. What if we disagree with you regarding whether or not the district court was correct on that ruling? What if we think the district court erred in determining that there was no jurisdiction? How do you proceed from that point? Well, I guess obviously the court is free to do what it wishes, but this very court, Your Honor, in the Herman Family Revocable Trust v. Teddy Bear said, quote, In contrast to our obligation to scrutinize sua sponte, a district court's assertion of jurisdiction, we have never held that we have an obligation to examine sua sponte, a court's conclusion, that it lacks jurisdiction. Of course, I can't tell you folks what to do. Yeah, we do have discretion to do that. You wouldn't dispute that, would you? So what's your position on the merits? Assume that we don't buy your argument on jurisdiction. Assume we conclude that there is jurisdiction. What's your position on the dismissal? The dismissal, on the basis that we did not adequately plead with specificity the causes of action alleged, we think is totally in error, and we went on at great length in our opening brief and our reply brief on those issues. We think that the third amended complaint, umpteen pages and umpteen paragraphs, clearly alleged adequate facts to support the causes of action stated. And we would submit that on our briefs, which go into this, Your Honor, in great detail. Why don't you stop the time? Stop the time. That's good. That's good. Oh, now you can't stop it? It's probably controlled from Denver or something. There it goes. There we go. All right. Thank you, Your Honor. I would like to point out to the Court that in the case of Greenlaw v. the U.S., cited at the appellant's reply brief, page 2, the United States Supreme Court has held that an appellate court may not alter a judgment to benefit a non-appealing party, that it takes a cross appeal to justify a remedy in favor of an appellee. And in this case, since the district court held that there was no jurisdiction to overrule that, there must be a cross appeal. But we have an independent duty, do we not, to determine the availability of jurisdiction or the inexistence of jurisdiction? That's what Article III is all about, cases or controversies. Well, Your Honor, I'm sure you have the ability to do that. The cases in the Ninth Circuit state, though, that I just quoted, state that you don't take that position or haven't taken that position in the past. It's not a question of we have the power. It's a question of whether we have the duty to do so. I think this Court's duty, without being presumptuous here, is to rule on appeals. And that issue is not fairly before this Court on a cross appeal. That would be our position. Do you have any further comments about your merits? No, I don't, Your Honor. So you want to save your time for rebuttal? Is that what you're saying? Certainly. All right, thank you. Thank you. Thank you. At my height, I scope those buttons out before the hearing starts. Smart move. Now, may it please the Court, my name is Robert Baldwin. I represent the defendant appellee, Beric Ferrazano and Wendy Sloan. Mr. Parker and Mr. Heitzer represent the other defendants appellees, and they are allowing me to make the primary argument. I will save two minutes for Mr. Parker if I'm allowed to do so. This is the 13th year of the saga. This suit was filed in 2009, but the underlying suit was filed in 2001. It is time to put a merciful end to this. I want to begin, if I may, by answering a question Judge Rawlinson, you asked, what is your standard of review on the jurisdictional issue? It is de novo, and I've cited that case. That's the Martinez v. Napolitano case cited in our brief. In response to opposing counsel's position that because there was no cross appeal filed, the issue of jurisdiction is not properly before us. That's wrong, and I'll explain why. And I've moved they made that argument for the first time in their reply brief. I filed a motion for leave to file a supplemental brief that was assigned to the merits panel, but then denied by the clerk. I don't know if you all saw that or not, but I raised the Rivero case, and I since filed a Rule 28J letter pointing that out. Rivero and the U.S. Supreme Court case, American Railway Express, which we had cited in our brief, says that if we seek only an affirmance to neither enlarge our rights nor diminish their rights, we don't have to cross appeal, and we can still attack the reasoning of the district court. What's your response to the opposing side's argument that once the district court determined it lacked jurisdiction, that it should have immediately remanded the case back to Montana State Court? I've got a two- or three-fold response, if I may. One is if the district court correctly and actually decides that, then it is divested of jurisdiction. We've got no arguing with that. That's black-letter law. We learned first year in law school. Two points, though. The district court never held it did not have jurisdiction. Read that transcript. It criticized the sufficiency of the jurisdictional allegations of the complaint, but it went back to chambers and entered an order granting our motions, which never argued jurisdiction. They were based on other issues. So when the court entered orders and a judgment, it was granting our motions that were on bases other than jurisdictional grounds. So the court never held that. It wondered about the sufficiency of the allegations. The second thing, though, is that the court was just wrong. This was a removed action. We established jurisdiction in the notice of removal. And that's what we look to, right? It is. And the court focused on the allegations in the third amended complaint. Well, you wouldn't expect the plaintiff who doesn't want to be in federal court to make it easy for us and plead the jurisdictional facts in their pleading. They're in the notice of removal. Rule 8A of the federal rule says you don't have to plead jurisdictional allegations if they're set out, if they're already established in some other pleading. The court looked at the wrong thing. So the court, to answer your question, is if that wasn't the actual holding and if it were correct, the result would be it should have been remanded. With a twist, though. How can you remand a state court? So that's a fly in that ointment, even if all that were true. In fact, there is jurisdiction. There just is. In Albrecht v. Lund, the case I cited to you in my brief, the Ninth Circuit, faced a similar position. The case was filed in state court, removed, dismissed on the merits, and the state court was dismissed on the merits. The disappointed plaintiff attacked jurisdiction in the appellate court. This court said, you don't raise a substantial question about jurisdiction, blew past it, and got to the merits. That's what this court should do. No one has argued. No one has argued that there is, in fact, not diversity and the requisite amount in controversy. Jurisdiction exists, and this court should get to the merits. Now, speaking of which, I will get to the merits. No one won this case, the underlying case that spawned this case. Judge Siebel ruled there was no prevailing party. Frontline was disappointed in that because it wanted costs and fees, and it went back and said, Judge, please amend your ruling. The judge said no. They did recover a couple of million dollars, didn't they? They recovered, yeah, $2.8 million on two of their counts. They lost most of their counts, and they sought over $30 million and got less than 10% of that. So this court, when it looked at that, it affirmed. What did your client prevail on? Well, this court and Judge Siebel said that our client prevailed on several significant issues. That's in the unpublished opinion from the appeal of the first case. This court said that the or that both parties had prevailed on significant issues, so. Can you tell me what significant counterclaim issue you prevailed upon? Well, I can't tell you that we prevailed on a counterclaim. All the counterclaim issues the plaintiff prevailed upon. True? That is true. All right, thank you. And now under Montana law, counterclaims are considered separately from claims for purposes of malicious prosecution, are they not? I don't believe they are, Your Honor. O'Fallon doesn't say that? I don't believe it does. Tell me why. Okay. O'Fallon had to do with whether the case had in fact terminated favorably for the malicious prosecution plaintiff. The issue there was whether the settlement was in fact a favorable termination. The defendant tried to argue, well, no, it was settled, it didn't go to verdict. The court said that counterclaims can be the basis for malicious prosecution claims. That, I don't argue with that. But that doesn't mean the test is that you look at only one set of claims or another set of claims. The Montana Supreme Court in SACO set out the elements, SACO versus Independent High Country Press, it's cited in our brief, set out the elements. It is that the proceeding terminated favorably. Not a set of claims, not a claim, not a particular claim, but that the proceeding. It used that word about three or four times. Let's suppose just a hypothetical case, a plaintiff brings an action, there's ten counts. Before final judgment, the trial court rules that eight of the ten counts don't state a cause of action. But on the ninth and tenth count, they recover a couple of million dollars. There are counterclaims and none of them are persuasive to the court. Who's the prevailing party? Well, you would have to look, I suppose, at various factors. I mean, you could argue that the party that did recover is the prevailing party. But you could also, as this Court affirmed Judge Siebel, you could say neither party prevailed. It was a mixed bag. We're here on Rule 12, aren't we? Yes. So if ordinarily it would be enough, you would think, for them to say in their complaint, we prevail. Right? Ordinarily, if we did not have a prior adjudication that was appealed and affirmed, that there was no prevailing party. That takes this out of that. It's not plausible under Twombly and Iqbal to say I prevailed when this Court has already said, no, you didn't. So that's not the normal case when you already have an adjudication that there was no prevailing party. And if I may address your point a little bit. Pardon me, Counsel. You said that we said there was no prevailing party? Different panel, same Court. Yes, Your Honor. Regarding a judgment by Judge Siebel? Yes, sir. And what was the case that said that? Can you give me the citation? It's cited in our brief. If I may step to the table, I can give you the precise citation. This Court's opinion affirming Judge Siebel appears at 389 Fed Appendix 748. It was issued on July 30, 2010. Now, that was modified in certain respects by a little bit later opinion. I don't have that citation for you right now, but it's in the briefs as well. But this part was not modified when the Court affirmed Judge Siebel's finding that there was no prevailing party. And this Court said both plaintiff and defendant prevailed on significant issues, etc. So this Court affirmed that finding. Now, and again, that was a different panel. I'm not suggesting it was you. What was the name of that case? Frontline Processing Corp. v. First State Bank of Eldorado. Okay. Just like this case. Okay. Isn't it the plaintiff's position, shrunk down to its essence, that they prevailed on the counterclaims and that's enough for malicious prosecution under Montana law? Well, I think their position is even more focused than that. They focus on particular counterclaims because it's not true that they prevailed on all the counterclaims. There's still those two that were dismissed as being unripe and they're still unripe and they're out there. So they've not been decided at all. Plaintiffs want to say we get to pick a particular counterclaim or two or three particular counterclaims that we prevailed on and thus we can sue on that. And let me make a couple observations about that then. First of all, Rule 8D allows alternative pleading of inconsistent counts. I can plead there was a contract and I'm entitled to recover it and if there wasn't, I'm entitled to recover in quantum merit. I cannot possibly win on both of those counts. My cow didn't eat your cabbage, but if he did, he was crazy. That's correct. And if you adopt the reasoning of Frontline, then you must conclude that the drafters of Rule 8D authorized malicious prosecution of claims because you cannot possibly win both of those counts. Okay? So you can't pick and choose. We cited cases saying you can't pick and choose. You analyze it as a whole. Otherwise, the floodgates are open. We quoted the treatise on business torts and we quoted cases that say you take the whole thing. You can't segregate it out and say I won on this particular claim. Therefore, I'm going to sue on most prosecutions on that. My understanding of the sort of total flavor of this is that the parties had a relationship. It came to an end. Frontline contended that the bank improperly withheld funds. They brought suit. There were counterclaims that they had engaged in fraud and other bad behavior. The end of the day, your client prevailed on none of its counterclaims and Frontline recovered $2 million in damages on its main claim. Isn't that the heart and soul of the case? That was the heart and soul of the prior case, yes. Frontline did recover $2.8 million out of the $30 million it sought. My contention is that the principal and the law firm responsible for bringing the counterclaims engaged in malicious prosecution, right? That's their contention, yes. We're here on Rule 12b-1. It'll be 6, I believe. It'll be 6, excuse me. Yes? What do they have to show other than what I just described? Well, for instance, they have to show that the proceeding terminated favorably for them, that they prevailed. That's an element of the tort. They cannot plead that plausibly under 12b. And if Baldwin's court has said there was no prevailing party. The court said in the case that you cited, the previous panel said that the district court did not abuse its discretion in declining to award attorney's fees under the contract. That's right. That's a different question than whether or not a party is prevailing, a prevailing party for purposes of pursuing a malicious prosecution claim. So I'm not sure I'm persuaded that the prior panel decision precludes any malicious prosecution claim. Well, you wanted to give Mr. Parker some time. I did. Mr. Parker, thank you. Sorry. No problem. May I please the court? I'm Mark Parker for the bank. There is a temptation to sort out the counterclaims and look at them separately, I understand. However, no court in Montana has ever done that, and I don't think it would be proper because they speak of proceedings. But we have to remember that we are far into a case now. It's 13 years old. And that the tort counterclaims, which the bank lost, admittedly, were not compulsory counterclaims to the contract claim. They were compulsory counterclaims to the raft of tort claims that were brought against the bank, and every one of those we won. So if the front line wants to say this was a simple contract dispute and we had brought a bunch of tort claims in a contract fight, fine. But they picked a tort fight. They accused us of about $30 million worth of torts. We threw counterpunches. Not a punch landed on a tort claim, theirs or ours. And the proceeding ended in a draw. Judge Sebo said so. This court said so. And let's end it. Let's please end it. Speaking of that, it's been going on for 14 years? Yes. And if the front line prevails before us and it goes back to district court, it's going to go on for another several years maybe? Yes. Have the parties considered mediation? Yes. Have they tried it? Yes. And was it successful? No. And where did that mediation take place? Years, a long time ago in front of Judge Lynch, I believe, as Magistrate Lynch, and that was in the underlying case. In this case, there's been no attempt to mediate. No. The Ninth Circuit panel, there's a mediation panel of the Ninth Circuit. I think both parties suggested that mediation would not be helpful. And is that your current position, the bank's current position? The bank's current position, not that we wouldn't go to mediation, but we can assess without some clarity the respective positions of the parties and see that they're very diverse. And then mediation would not be helpful at this stage. All right. Thank you, counsel. Rebuttal? Yes, Your Honor. Thank you. What's your position on mediation? Always ready to talk. Always ready to talk. But it hasn't been the type of case, Your Honor, that the bank has been really willing to talk realistically in our opinion. Mr. Pierce, Mr. Parker for the bank said that the counterclaims which they raised to your tort claims were simply a counterpunch to your tort claims and you lost all the tort claims. Isn't that a good ground to find that the counterclaims were not malicious? Well, we won on all the counterclaims, Your Honor, every single last one of them. There were, I think, 13 of them. Were there any tort counterclaims? Fraud, RICO claims, among others. These claims were filed. My position was none of the tort counterclaims were successful on either side. You take issue with that? I think that's true, Your Honor. However, the counterclaims were all lost. The bank never contested the fact that they improperly took and withheld the million dollars of Frontline's reserve. They never contested that issue. They were red-handedly wrong on that. Was that tort or contract? Contract, Your Honor. Frontline is a very, very small company located in Bozeman, Montana. The defense firm and the bank hoped by filing RICO claims and by filing fraud claims and continuing this litigation forever that Frontline would run out of resources to sue them, basically trying to run them ragged, run them into bankruptcy so they could no longer come after them. What I understand Mr. Parker to have said is that if this had simply been Frontline saying, you've wrongfully withheld our money and you recovered on that and there had been no other claims brought by Frontline, that that would be a different story. But his description, and correct it if you can, is that in addition to that, you brought a series of tort claims, they brought some counterclaim responses to those, and in essence they get wiped out. No, their responses to our tort claims were different from their fraudulent action claim and their RICO claims. That had nothing to do with the torts that were alleged. We alleged the tort of bad faith, Your Honor. They filed defenses to our tort actions. Those defenses were successful in some regard. The counterclaims, which were numerous and huge and involved, as I said, fraud and RICO claims were extraordinarily significant to Frontline. Were they compulsory counterclaims? No, absolutely not, Your Honor. And so, well, compulsory. In the sense that they arose out of the same transaction which was alleged by the plaintiff. I think they would be. They may have been. But the question is, the issue is, they were totally improper. There was no basis for them at all. So they could have won against your tort claims by simple denial, not necessary to raise counterclaims. Exactly. Precisely. And that's why the counterclaims were nothing but a tactic to bankrupt Frontline, in essence, and destroy its reputation. And that's why we're here. I would like to quickly respond. May I ask you about the abuse of process claims? Those were raised in state court, but were they raised as counterclaims in the federal action? Not in the federal action. We didn't have any chance to do any pleading other than file our original complaint. Or the underlying action. No. No, they weren't. But if they weren't raised in the federal action, how did they survive? Well, Your Honor, for example, we couldn't really file an abuse of process claim against the Barrick firm. They were defense counsel. They weren't a party to the underlying action. So what do we do with those claims at this point? Well, I still think they survive. They're alive. How? If you couldn't raise them against the firm, how do they survive now procedurally? Well, I think we can assert that cause of action and that claim any time we wish. And if the statute of limitations hasn't run, I think they're still liable. The statute of limitations starts on abuse of process action immediately that the process is issued without waiting for a favorable termination to the plaintiff. And it continues as long as the abuse of process continues, the statute is told. I mean, it's a continuous process. There's no statute of limitations once the abuse is committed. As long as they continue to maintain them and prosecute them. Do you have a case that says that? No, I don't, Your Honor. I don't have it offhand. I'm sorry. But they, as long as, it's our position, as long as the lawsuit continues and they continue to prosecute that lawsuit actively, that would be our position that the statute does not run. Well, I would really like to have some authority for that statement. Okay. I don't have it with me. I'm sorry, Your Honor. Just as a procedural matter, when were the abuse of process claims filed? In what pleading? It would have been in the complaint that was filed on April 7th, 2009, Your Honor. And that was in the state court? State court action, yes. The one that was removed in this case. Okay. Well, the abuse of process would be the counterclaim, right? We filed the abuse of process claim in our complaint in state court on April 7th, 2009, Your Honor. Okay. All right. Could you wrap up, counsel? Yes. I would just like to point out very quickly, Your Honor, that the court's order in this case, filed on October 29th, 2012, stated on page one, upon the record made in open court. And so it's our position that the court was incorporating in its order its entire ruling made in open court. And as far as the issue of the cross appeal is concerned, in the Ninth Circuit case of Herman Family Trust versus Teddy Bear, the court stated, and quoting the Christensen v. Colt Industries Corporation case on page 807, Regrettably, questions of time, cost, and efficiency do not undergird jurisdiction, nor is jurisdiction a question of equity. A court lacking jurisdiction to hear a case may not reach the merits, even if acting in the interest of justice. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Hawkins, Rawlinson, Bea